Johs P. Lomehzo, J.
This is a motion for an order granting to the defendant an inspection of the subject minutes taken before the Grand Jury of the County of Monroe which rendered an indictment against the defendant charging him with the crime of manslaughter in the first degree. The motion is in the alternative for the court to examine the subject Grand Jury minutes. It is the contention of the defendant that the *634 evidence taken before the Grand Jury, if unexplained or uncontradicted, is not sufficient to warrant conviction of the defendant by a trial jury. (Code Grim. Pro., § 251.)
The court has examined the Grand Jury minutes.
The defendant Arthur Graupman first became a patient at the Rochester State Hospital in the year 1946, and after a stay of approximately three months, was released. Subsequently, and on May 10, 1948, he was returned to the hospital, adjudicated incompetent pursuant to an order of this court dated May 10,1948. Medically the basis for confinement and adjudication was confusion, disorientation, psychosis due to alcohol and alcoholic deterioration. Since 1948 the defendant has been continuously confined to the Rochester State Hospital on an ambulatory basis and has never been permitted to leave the institution. As recently as May 6, 1962 the records of the Rochester State Hospital indicate that there is no change observed in the defendant’s mental and physical condition and he continues to be erratic, of emotional instability, irritable, suspicious and demonstrates confusion with poor judgment and impaired comprehension. His diagnosis is still alcoholic deterioration and his mental state is such that he requires continued hospitalization and treatment in a mental hospital.
The defendant had been placed in a confinement ward with other mental patients including one John Russell who was 81 years of age. The diagnosis of the patient Russell was psychosis due to cerebral arteriosclerosis, and according to the medical records of the hospital this patient was, most of the time, because of his mental condition, antagonistic, hostile, irritable and interfered with other patients, picking on them, and threatening such patients with physical bodily harm if they did not comply with his demands or commands. The records of the hospital indicate that there was no prior record of any act of violence on the part of the defendant herein, however, the hospital records indicate that there were a large number of violent acts of assault upon other patients on the part, of the patient Russell. At approximately 3 o’clock on the morning of January 20, 1962, it is alleged that the defendant, who on previous occasions had been antagonized by the patient Russell, was again provoked and struck the patient Russell with a chair, one of the blows resulting in a fractured rib which penetrated Russell’s lung causing blood to escape into his chest cavity, decreasing the breathing space, culminating with subsequent heart failure and death.
The Grand Jury of the County of Monroe by Indictment No. 24, filed and transferred on February 16, 1962 to this court *635 on motion of the District Attorney, charged defendant with the crime of manslaughter in the first degree in violation of subdivision 2 of section 1050 of the Penal Law. On March 28, 1962, the defendant was arraigned at the hospital upon the aforesaid indictment and a plea of not guilty entered.
Pursuant to the District Attorney’s request under the provisions of section 658 of the Code of Criminal Procedure, the court directed an examination to be made of the defendant to determine whether or not he was capable of understanding the charge placed against him or able to assist in his defense.
On the 30th day of March, 1962, the defendant was examined by Doctors Benjamin Pollack and Harold A. O’Connor, who, by reports sworn to April 6, 1962, certified that the defendant Arthur Graupman was in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceeding or making his defense.
The evidence presented before the Grand Jury consisted of testimony given by an official police stenographer summarizing a statement obtained from the defendant at the hospital on the 25th day of January, 1962. The defendant at that time admitted the assault by the use of a chair which caused Bussell’s death, and referred to the fact that Bussell was always bossing him around, that he had gone into Ward 40 where there were other patients, and that Bussell had told him to get out, and after warning Bussell the defendant picked up a wooden chair and struck Bussell. It was conceded before the Grand Jury that no one witnessed the actual alleged assault. The Administrative Assistant to the Director of the Bochester State Hospital was asked, since no one witnessed the incident, how he came to the conclusion that it was the defendant. He testified that the only evidence the hospital had as to the commission of the alleged crime was the defendant’s admission. Later, and after the commission of the alleged assault, an attendant, who iestified before the Grand Jury, stated that he went to the ward where the patient Bussell was and found him in a chair bleeding. That Bussell told him “ another patient had hit him.” There is no testimony as to who this patient was. Ho other evidence was presented before the Grand Jury relating to the commission of the alleged assault.
Thus, no evidence was presented to the Grand Jury in addition to the admissions made by the defendant to the official police stenographer. Section 395 of the Code of Criminal Procedure requires, in addition to the confession or admission of a defendant, “ additional proof that the crime charged has been committed.” Without such “ additional proof ” at a trial *636 there could be no conviction. There is no difference in the requirement of additional evidence as required by section 395 of the Code of Criminal Procedure and the corroboration required of accomplices’ testimony by section 399 of the Code of Criminal Procedure; and without the presentation of such supporting evidence there could be no conviction at a trial, and a failure to present such evidence before a Grand Jury requires that an indictment be dismissed. “ Therefore * * * if the only testimony before the grand jury is the testimony of accomplices, it cannot be said to be sufficient, if unexplained or uncontradicted, to warrant a conviction by the trial jury.” (People v. Sweeney, 213 N. Y. 37, 42.)
The court holds that there was insufficient evidence before the Grand Jury to sustain the subject indictment.
In addition a question is presented as to whether or not the defendant can be prosecuted in view of the provisions of section 1120 of the Penal Law.
One of the witnesses who testified before the Grand Jury was Dr. Benjamin Pollack, who is the Administrative Assistant to the Director of the Rochester State Hospital, who testified that the day before he appeared he examined the defendant in preparation for the testimony that he was to give before the Grand Jury, and testified that because of the mental condition of the defendant, he had no ‘ ‘ good, obvious mental capacity to fully understand the nature of his act or to know that it was wrong.” And also, that his mental capacity and ability to understand situations was impaired. In view of the long, continuous mental history of the defendant and his prognosis and the expert medical testimony given before the Grand Jury as to defendant’s mental incapacity, the court comes to the conclusion that the defendant cannot be prosecuted for the crime allegedly committed by him in view of the provisions of section 1120 of the Penal Law of the State of New York. The indictment is dismissed.